**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

X--------------------------------------------------------X

| | | |
|---|---|---|
| Reynaldo Vasquez, | : | 1:15-cr-00252 (PKC) |
| Petitioner | : | |
| v. | : | |
| United States of America, | : | |
| Respondent | : | |

X--------------------------------------------------------X

# REPLY TO THE RESPONSE OF THE UNITED STATES OF AMERICA IN OPPOSITION TO PETITIONER REYNALDO VASQUEZ'S PETITION FOR A WRIT OF ERROR CORAM NOBIS

Gary L. Cutler, P.C.
3 Columbus Circle
15th Floor
New York, NY 10019
garycutlerlaw@gmail.com
(212) 227-4358 Office
(917) 628-9062 Cell

## Table of Contents


| Title | Page |
|---|---|
| A. Introduction........................................................................ | 1 |
| B Defendant Did Not Waive His Right to File This Petition In His Plea Agreement.................................................................. | 1 |
| C. Mr. Vasquez's Role in the Offenses................................................ | 5 |
| D. The Petition Was Timely.............................................................. | 5 |
| E. Continuing Legal Harm.............................................................. | 10 |
| F. Conclusion.............................................................................. | 15 |


## Table of Authorities


| Caselaw | Page No. |
|---|---|
| Blaszczack v. U.S., 56 F.4th 233.............................................................. | 14 |
| Bronson v. Schulten, 104 U.S. 410, 416-417 (1881).................................. | 3 |
| Davis v. U.S., 417 U.S. 333 (1974)........................................................ | 2, 4 |
| Doe v. U.S., 915 F.3d 905 (2d Cir. 2019)................................................. | 9 |
| Dressler v. U.S., Civil Case No. 3:21cv1055 (JCH), 2022 WL 3107313, *1, *3 (D. Ct., Aug. 4, 2022)......................................................................... | 4 |
| Doe v. U.S., 915 F.3d 905 (2d Cir. 2019), | |
| Evelyn Bldg. Corp. v. City of New York, 257 N.Y. 501, 513 (1931).................. | 1 |
| Fleming v. U.S., 146 F.3d 88 (2d Cir. 1998)............................................ | 2 |
| Foont v. U.S., 93 F.3d 76, 79 (2d Cir. 1996)............................................ | 2 |
| Petrolawics v. Scuderi, 82 A.D.2d 1001, 1002 (3d Dept. 1981)........................ | 1 |
| Martignoni v. U.S, Nos. 10 Civ. 6671, 92 Cr. 1097 (JFK), 2011 WL 4834217 (Oct. 12, 2011, S.D.N.Y.)....... ............................................................ | 2 |
| McNally v. U.S., 490 U.S. 350 (1987)..................................................... | 2, 7, 8, 9 |
| Napout v. U.S., 963 F.3d at 184 (2d Cir 2011)........................................... | 7 |

**Caselaw** **Page No.**

Nicks v. U.S., 955 F.2d 161, 166 (2d Cir. 1992)........................................ 2, 3

Snyder Const. Co. v. State of New York, 99 Misc.2d 386, 416 N.Y.S.2d 491, 493 (Ct. Claims 1979)............................................................... 1

United States v. Aytes, No. 19-3981, Dkt. No. 70 (2d Cir. Apr. 13. 2021)........ 14

U.S. v. Bahel, 662 F.3d 610 (2d Cir 2011)........................................ 7

U.S. v. Beckish, 17 CR 569 (ER), 2020 WL 4500178, *1 (S.D.N.Y Aug 5, 2020) 4

U.S. v. Capoccia, 354 Fed. Appx. 522 (2d Cir. 2009)................................ 12-13

U.S. v. Full Play Group, S.A., 609 F.Supp.3d 5 (E.D.N.Y. 2023) ("September 23 Order")............................................................ 5, 8, 11, 12, 13, 15

U.S. v. Giffen, 326 F.Supp.2d 497 (S.D.N.Y. 2004).................................6, 7

U.S. v. Lopez and Full Play Group, S.A., 143 F.4th 99 (2d Cir., July 2, 2025)........6, 7, 9, 14, 15

U.S. v. Lopez, --S.Ct.-- , 2026 WL 79861 (Mem).......................................14

U.S. v. Mandanici, 205 F.3d 519 (2d Cir. 2000)........................................2, 8

U.S. v. Mandel, 862 F.2d 1067 (4th Cir. 1988).......................................... 2, 9

U.S. v. Morgan, 346 U.S. 502 (1954)...................................................2, 3

U.S. v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002)................................ 12, 13

U.S. v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000)........................................ 13

U.S. v. Tyler, No. 04 CR 1069, 2009 WL 1953 (E.D.N.Y. Jul 7, 2009)............. 3-4

U.S. v. Ucio, 940 F.2d 753 at 758 (2d Cir. 1991)...................................... 13


**Filings on the Docket**


**Filing** **Page No.**

Brief for the United States, Lopez v. United States No. 25-396, 2025 WL 3645624 at * 3 (U.S. Dec. 9, 2025); (Minute order May, 27 2007)........14

Dkt. Nos. 2102 (Full Play Group), orders of dismissal on June 15, 2026............ 6

Dkt no. 2103 (Lopez), order of dismissal on June 15, 2026.......................... 6.

Dkt No. 2042, Vasquez's First Motion for Appointment of CJA Counsel........... 6

| Filing | Page No. |
| --- | --- |
| Dkt. No. 2104, Vasquez's Second Motion for Appointment of CJA Counsel...... | 6 |
| Dkt No. 2072........................................................................ | 13-14 |
| Dkt. No. 2076........................................................................ | 9. |


**Statutory Authority**


| Citation | Page |
| --- | --- |
| 18 U.S.C. § 1346.................................................................. | 5, 7, 8, 9 |
| 28 U.S.C. § 1651(a) (All Writs Act)...................................................... | 2-3 |
| 28 U.S.C. § 2255.................................................................. | 1, 6 |


.

## A. Introduction

This Reply Brief is offered in reply to the Government's Response In Opposition to Petitioner Reynaldo Vasquez's Petition for a Writ of Error Coram Nobis. The Government raises a number of specific issues that apply to Mr. Vasquez. Each will be answered in its turn.

## B. Defendant Did Not Waive His Right to File This Petition In His Plea Agreement

The first issue raised by the Government is the incorrect assertion that "Vasquez waived the right to file this petition in his plea." Resp. Br, p. 1. In his plea agreement, Mr. Vasquez agreed to a waiver of appeal and a waiver to a 28 U.S.C. § 2255 action but not to a petition for a writ of coram nobis. The plea agreement (Court Exhibit 1 to the August 23, 2021 plea), a copy of which is Exhibit A to this Reply Brief, states in relevant part:

> The defendant agrees not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event the Court imposes a term of imprisonment of 57 months or below.

The Court sentenced Mr. Vasquez to 16 months of imprisonment.

This petition for a writ of error coram nobis is neither an appeal nor a 2255 petition. The remaining term of the prohibition is "or challenge by . . . any other provision." "Any other provision" is undefined. There is no direction in the language where to look. Does it mean any other provision in the United States Code? It certainly doesn't say. A writ of coram nobis is not a "provision." The term has been left undefined by the drafters of the plea agreement, the Eastern District of New York U.S. Attorney's office. The ambiguity in the term is attributable to the drafter, and the court must construe the ambiguity strongly against the drafter of the agreement. Evelyn Bldg. Corp. v. City of New York, 257 N.Y. 501, 513 (1931); Petrolawics v. Scuderi, 82 A.D.2d 1001, 1002 (3d Dept. 1981); Snyder Const. Co. v. State of New York, 99 Misc.2d 386, 416 N.Y.S.2d 491, 493 (Ct. Claims 1979).

The writ of error coram nobis is not a creature of the United States Code. Rather it is a writ dating back to the earliest days of the English common law. Nicks v. U.S., 955 F.2d 161, 166 (2d Cir. 1992). It was recognized as an appeal against a judgment whether because some fact rendered it erroneous or because of some error of law apparent on its face. Id., at 166. It was used to obtain relief for judicial wrongs for which there was no other remedy. Id., at 166. A writ could not be obtained as a matter of right; its issuance was left solely to judicial discretion. Id., at 166.

The rationale for a writ of error coram nobis is "justice," not statutory prescription. The first element of a successful coram nobis petition is, "There are circumstances compelling such action in order to achieve justice." Foont v. U.S., 93 F.3d 76, 79 (2d Cir. 1996); U.S. v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000). A change of the law post-conviction is a compelling circumstance to seek justice because it implicates a conviction that has no basis in law. See Davis v. U.S., 417 U.S. 333 (1974) (if due to a change in the law by an action of the Supreme Court, a conviction and punishment are no longer criminal, then a miscarriage of justice presents exceptional circumstances justifying collateral relief). See also, Martignoni v. U.S., 2011 WL 4834217, Nos. 92 Cr. 1097 (JFK), 10 Civ. 6671 (Oct. 12, 2011, S.D.N.Y.) (defendant's conviction on three counts overturned because they were no longer viable due to a Supreme Court ruling); U.S. v. Mandel, 862 F.2d 1067, 1074 (4th Cir. 1988)(ten years after conviction, mail fraud offenses no longer remained viable due to a Supreme Court decision in McNally v. U.S., 490 U.S. 350 (1987), and the racketeering conviction must be vacated).

A writ of error coram nobis is an ancient common law remedy and federal courts are authorized to grant the writ by the All Writs Act, 28 U.S.C. § 1651(a). Fleming v. U.S., 146 F.3d 88, 89 (2d Cir. 1998)(citing U.S. v. Morgan, 346 U.S. 502 (1954)). The All Writs Act, 28

U.S.C. § 1651(a), states: "(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The All Writs Act says nothing about the substantive remedy itself but merely enables a preexisting common law remedy to be used by the federal courts. If it weren't a preexisting principle of law, it would not comport with the All Writs Act.

Moreover, "American courts have gone a bit further in granting *coram nobis* relief founded on the inherent power of a court over its own judgments." Nicks, 955 F.3d at 166, (citing Bronson v. Schulten, 104 U.S. 410, 416-417 (1881)). That is no provision of the U.S. Code that defines a writ of error coram nobis.

"In order to obtain a writ of error *coram nobis,* and to continue litigation after final judgment, after time has expired for review and the sentence has been served, there must exist 'circumstances compelling such action to achieve justice.'" Nicks, 955 F.2d at 167, (quoting Morgan, 346 U.S. at 511).

The equitable considerations of the situation here, where Mr. Vasquez's count of conviction is no longer criminal, overrides the ambiguous language of the ban in the plea agreement of "any other provision."

The cases cited in the responsive opposition brief of the U.S. Attorney's office for the argument that the Second Circuit has extended the general enforceability of appeal and collateral attack waivers to coram nobis challenges, do not aid that proposed point of law. (See Resp. Br, p. 20, first full paragraph). First, the cases cited are all district court cases in the Second Circuit. Second, the three cases have waivers that are considerably broader than the waiver in the present case and do not suffer from the ambiguity of the waiver in the present case. In U.S. v. Tyler, No. 04 CR 1069, 2009 WL 1953199I (E.D.N.Y. Jul 7, 2009)(Dearie, J.) the waiver was of

defendant's "right to appeal or otherwise challenge his conviction or sentence." Id., at *1. Similarly in Dressler v. U.S., Civil Case No. 3:21cv1055 (JCH), 2022 WL 3107313, *1, *3 (D. Ct., Aug. 4, 2022), defendant waived "his right to appeal or collaterally attack his conviction or sentence." In U.S. v. Beckish, 17 CR 569 (ER), 2020 WL 4500178, *1 (S.D.N.Y Aug 5, 2020), defendant waived "his rights to direct or collateral appeal of any order of restitution equal to or less that $7.2 million."

The present case involves a change of law rendering the conviction invalid. The relief sought is in service of justice. This case is unlike the three cases relied upon by the Government and cited in the Response brief for the point that the Second Circuit has extended the general enforceability of appeal waivers to coram nobis petitions. In the three cases cited by the Government, defendants sought to fine tune their judgments. In Tyler, defendant argued that his sentences on two counts should run concurrently rather than consecutively as Judge Dearie had ordered. Tyler, 2009 WL 1953199 at *1. In Dressler, the defendant argued that the government "'failed to provide crucial exculpatory information' to his attorney before he pled guilty," namely impeachment evidence. 2022 WL 3107313 at * 2. The court pointed out that the government was not obligated to provide impeachment evidence before the plea. Id., at *4. As a result, the defendant did not show compelling circumstances, that is, that a procedural defect led to a 'complete miscarriage of justice.'" Id. at *4 (citing Davis v. U.S., 417 U.S. 333, 346 (1974)). In Beckish, the defendant sought to lower the amounts of his restitution and forfeiture orders based on his contention that he was confused due to his substance abuse at the time he discussed the waiver with his attorney. 2020 WL 4500178 at *3.

As a result of the above, there is no bar to the petition due to a waiver in the plea agreement.

### B. Mr. Vasquez's Role in the Offenses

The Government commits a number of errors in its factual rendition of Mr. Vasquez's role in the offense. First, the Government inaccurately states that Mr. Vasquez was president of CONCACAF and UNCAF. (Resp. Br., p. 7). The Government also discusses a bribery scheme to which Mr. Vasquez did not plead guilty involving the FESFUT Region friendlies. (Resp. Br., p. 7, ¶¶ 3, 4). Counts 42 to 45 of the Superseding Indictment all involved FESFUT Region friendlies matches, but all were dismissed at sentencing. (See Vasquez Opening Brief, p. 8). The Government attempts to parlay discussion of Counts 42 to 45 in the PSR into convictions. Mr. Vasquez did not enter a plea to these Counts.

### C. The Petition Was Timely

Mr. Vasquez laid out the Procedural History of this case in his Petition for a Writ of Error Coram Nobis and memorandum of Law In Support" ("Petition"), pp. 1-2, 11-12)). Mr. Vasquez was sentenced on September 29, 2022. On September 1, 2023, this Court granted a judgment of acquittal of co-defendants Full Play Group, S.A. and Hernan Lopez. U.S. v. Full Play Group. S.A. ,609 F.Supp 3rd 5 (2023)("September 2023 Order"). The Court also vacated Full Play's and Lopez's convictions. This Court concluded that 18 U.S.C. § 1346, charging honest services wire fraud, did not apply to foreign commercial bribery. On July 2, 2025, the Second Circuit vacated and remanded this Court's decision finding that 18 U.S.C. § 1346 did encompass foreign commercial bribery. The Second Circuit remanded the case to this Court in light of the pending motions to dismiss. Defendants Full Play Group and Hernan Lopez appealed the Second Circuit's ruling to the Supreme Court. On January 12, 2026. The Supreme Court vacated the Second Circuit's judgment and remanded the case for further consideration in light of defendants' motions to dismiss the Indictment. This Court dismissed the Third Superseding

Indictment against Lopez and Full Play on May 27, 2026 on the record. (Minute order May 27, 2026). This Court issued written orders of dismissal on June 15, 2026. Dkt. Nos. 2102 (Full Play Group), 2103 (Lopez).

Mr. Vasquez moved to have a CJA lawyer appointed to perfect a petition for a writ of error coram nobis on April 3, 2026. Dkt No. 2042. On April 8, 2026, this Court issued a minute order stating that it defers ruling on the CJA appointment request because such a ruling will depend on the Court's ruling in this case (Lopez and Full Play Group) overturning certain defendants' convictions. Because that decision is pending appeal, the Court finds that appointment of CJA counsel is premature.

Mr. Vasquez applied again for a CJA lawyer to file a petition for a writ of error coram nobis on June 22, 2026. Dkt. No. 2104. The Order to appoint a CJA lawyer was granted on June 23, 2026. It is Mr. Vasquez's contention that with the approval of a CJA attorney appointment coming on June 23, 2026, the petition is timely.

The U.S. Attorney's office faults all petitioners for failing to make the argument presented here on appeal or in a 2255 motion. Resp. Br., p. 24. However, it wasn't until one year after Mr. Vasquez was sentenced that Full Play and Lopez were granted a judgment of acquittal by this Court and their convictions were reversed. On July 2, 2025, the Second Circuit overturned this Court's ruling. U.S. v. Lopez and Full Play Group, S.A., 143 F.4th 99 (2d Cir., July 2, 2025). The Supreme Court vacated the Second Circuit's ruling on January 12, 2026. This Court did not decide a motion to dismiss the Third Superseding Indictment until May 27, 2026. This enabled Mr. Vasquez to apply again for a CJA attorney, which was approved on June 23, 2026, just two months' ago.

The Government argues that a variation of the argument raised here was first judicially adopted in July 2024 in U.S. v. Giffen, 326 F.Supp.2d 497 (S.D.N.Y. 2004). However, as noted by the Government, no later precedent repudiated Giffen, at most distinguishing it. That Giffen was not valued as precedent for the point that Congress did not intend that the intangible right to honest services encompasses bribery of foreign officials in foreign countries, is evident from the Second Circuit's reversal of U.S. v. Lopez and Full Play Group, 143 F.4th 99 (2025). Additionally, the Government undercuts its own argument when it states that the Lopez decision described Giffen as "factually distinguishable." Resp. Br., p. 25. The Government points out that Giffen was repeatedly distinguished citing Napout v. U.S., 963 F.3d at 184 (2d Cir 2011)(observing that Giffen is 'not . . .directly analogous'); United States v. Bahel, 662 F.3d 610, 632 (2d Cir 2011) (deeming Giffen 'unhelpful')." Resp. Br., p. 25.

Giffen, involved a prosecution under the Foreign Corrupt Practices Act and other statutes including 18 U.S.C. § 1346. Giffen made unlawful payments of $78 million dollars to Kazakh officials in order to obtain business for his New York headquartered firm. Giffen sought to dismiss portions of Counts Fifteen through Twenty-three that alleged a scheme to deprive the citizens of Kazakhstan of the honest services of its government officials. Giffen argued that application of that theory impermissibly extends the mail and wire fraud statutes beyond Congress's original intent. Giffen, 326 F.Supp. 2d at 504. Congress enacted Section 1346 to overrule McNally v. United States, 483 U.S. 350, 358 (1987), and reinstate the intangible rights theory. Giffen, 326 F.Supp.2d at 504. Congress was re-criminalizing mail and wire fraud schemes to deprive others of their intangible rights of honest services, which had been protected before McNally. Giffen, 326 F.Supp.2d at 504. The Court found that the pre-McNally caselaw protecting honest services before McNally was "the slenderest of reeds." Giffen, 326 F.Supp.2d

at 504. At oral argument the Government could not point to any decision where this was the case. Id., at 504. The government alluded to another case where the court dismissed the honest services charge because the Government failed to prove any law in Ukraine analogous to Section 1346 that was violated. In the case in Giffen, the government made no allegation regarding Kazakh law, much less a Kazakh statute analogous to Section 1346. Id., at 505. Given the absence of pre-McNally caselaw supporting the overseas application of the intangible rights theory, the court concluded that in enacting Section 1346, Congress was merely re-criminalizing the intangible rights theory as it existed and did not criminalize the deprivation of all intangible rights of honest services. Id. at 505.

The Government argues that the September 2023 Order (of this Court, granting a judgment of acquittal for Lopez and Full Play Group), does not serve as a change in law such that it provides cause for an untimely filing. However, the Government misses the significant aspect of the September 23 Order and that is, that it was reversed by the Second Circuit, which was then reversed by the Supreme Court. In reversing the Second Circuit, the Supreme Court the very reversal indicated that it favored the view that 18 U.S.C. § 1346 is inapplicable to commercial bribery in foreign countries. This is the sort of binding post-conviction precedent that has changed the holding of a prior binding precedent. (*See* Resp. Br., p. 25). It is not the district court holding that has the force of law, it is the Supreme Court's decision that has the force of law.

In U.S. v. Mandanici, the Second Circuit found that a new rule is a rule that breaks new ground or imposes a new obligation on the States or the Federal Government. U.S. v. Mandanici, 205 F.3d 519, 527-528. A case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. Mandanici, 205 F.3d

at 528. At the time of Mr. Vasquez's conviction, the rule that the intangible right to honest services does not encompasses bribery of foreign officials in foreign countries, was not a new rule until well after Mr. Vasquez was sentenced. He was sentenced almost one year before this Court acquitted Full Play Group and Lopez on September 21, 2003. Mr. Vasquez was sentenced almost 3-1/2 years before the Supreme Court reversed the Second Circuit's ruling in U.S. v. Lopez and Full Play Group. This justifies the delay in bringing a petition for coram nobis relief.

The Government also argues that the length of time that passed after conviction and the raising of the present argument is fatal to Mr. Vasquez's position. However, in U.S. v. Mandel, 862 F.2d 1067, 1074 (4th Cir. 1988), petitioners filed their petition for a writ of coram nobis 10 years after conviction when the Supreme Court decided McNally v. U.S., holding that the mail fraud statute, 18 U.S.C. § 1346, did not protect persons against schemes to defraud persons of their intangible rights such as the right to honest government. The Mandel court held that because none of the underlying offenses of mail fraud remain viable after McNally, the racketeering convictions in Mandel must be vacated in accordance with the petitions. Mandel, 862 F.2d at 1074.

In Doe v. U.S., 915 F.3d 905 (2d Cir. 2019), the Second Circuit stated that the standard is whether defendant provided sufficient reasons to justify his delay. Doe, 915 F.3d at 915. In Doe, defendant delayed filing a coram nobis petition for five years during which he cooperated with the government. Defendant had pleaded guilty to an aggravated felony in accordance with wrong advice from his lawyer that he would not be deported. Those handling his cooperation wrongly advised him that he would get his citizenship or his criminal case would be dismissed. The Second Circuit found that this provided sufficient justification for his delay. Doe, 915 F.3d at 915.

### D. Continuing Legal Harm

The Government argues that Mr. Vasquez has not shown concrete, non-speculative continuing legal consequences from his conviction. Resp. Br., p. 27. The Government cites the terms of Mr. Vasquez's plea agreement in which Mr. Vasquez agreed "he 'knowingly . . . waive(d) all constitutional, legal, and equitable defenses to the forfeiture of said assets.'" It is obvious, that Mr. Vasquez could not "knowingly" waive defenses to forfeiture that had not yet been known, namely, relief arising from the petition for coram nobis. What the Government ignores is that if Mr. Vasquez is successful on this petition, he should be returned to a state where he was never charged and convicted because the crime to which he pleaded is not a crime. If his conviction is expunged, so should the order of forfeiture be expunged. The return of fines and other financial penalties is warranted when coram nobis relief is granted. Mandel, 862 F.2d at 1075 and n. 13 (affirming the district court's order that the government return any fines in connection with the grant of the coram nobis petition).

Nor is it accurate to state that coram nobis relief is a defense to the forfeiture, rather it is an annulment of the forfeiture on the theory that what is, never should have been. The plea agreement that the Government still seeks to enforce should revert to a nullity. Coram nobis relief, after all, seeks to do justice. It is unsettling that the Government would argue as it does that the plea agreement's terms should prevail even though there never should have been a plea agreement, in the first place.

The Government also scoffs at Mr. Vasquez's claim of reputational harm. Their arguments lack any sense. Mr. Vasquez merely asserts that his reputation may recover some dignity for him with the granting of a writ of coram nobis. That is not for the Government to judge. Resp. Br., p. 29.

The loss of business opportunities is a fact of the conviction. If the conviction is overturned, then it could be the basis for Mr. Vasquez's renaissance. Resp. Br., p. 29. Mr Vasquez is not asking for the government or this Court to do anything further than overturn the conviction, which may have its own rewards.

Again, the Government resorts to the plea agreement that never should have happened to say that Mr. Vasquez is banned from soccer by the plea agreement where he consented to bans in paragraphs 3(h) and 4. Resp. Br., p. 29.

The Government also argues that restrictions on Mr. Vasquez's ability to travel to the United States would not necessarily be relieved by coram nobis relief. Resp. Br., p. 30. The Government acknowledges that the inability to travel is a "cognizable consequence." Petitioners do not have the burden of demonstrating that a writ of coram nobis would allow them to travel to the United States. That is unknowable, but it is one step closer for that outcome to occur.

The Government argues that petitioners cannot establish circumstances compelling coram nobis relief to achieve justice. Resp. Br., p. 30. What the government ignores is that the mere reversal of the conviction alone achieves justice. It in itself provides a measure of justice. The writ issues because the convictions are no longer for a valid crime. The government misidentifies the September 23 order as the source for the relief when it is so obviously the Supreme Court's reversal of the Second Circuit's denial of this Court's order. The Government argues that the Court should apply the Second Circuit's reasoning in Lopez to confirm the petitioners' honest services wire fraud convictions on the merits. The Government cannot make that argument. The U.S. Attorney's Office for the Eastern District of New York has already gone on the record in this case to state that the Lopez decision of the Second Circuit is non-

precedential. See Dkt. No. 2076, p. 3. It was the U.S. Attorney's opinion that the District Court may not rely on the Second Circuit's opinion as precedential.

The Government's assertion that "even if the Court disagrees with Lopez, declines to apply its reasoning, and persists in holding that honest-services wire fraud does not extend to foreign commercial bribery, the Court should deny the petitions on the basis that petitioners suffered no prejudice because all of their convictions are supported on alternative legal theories. Including "Classic" deprivation-of-money-or-property wire fraud, racketeering, and/or obstruction of justice, and conspiracy to bribe executives of an entity headquartered in the United States." These theories have never been vetted in this case. To do so, would be as if there were a retrial of these claims. Coram nobis relief does not permit a retrial of claims.

The Government asserts four reasons petitioners fail on the legal merits for Coram Nobis relief:

"(i) the September 23 Order is nonbinding; (ii) this Court's 2023 analysis extending the reasoning of two Supreme Court decisions to new facts is not a change in the law; (iii) although *Lopez* is only persuasive authority, the Court should apply the Second Circuit's reasoning in *Lopez* to confirm the petitioners' honest-services wire fraud convictions on the merits; (iv) even if the Court disagrees with *Lopez*, declines to apply its reasoning and persists in holding that honest-services wire fraud does not extend in foreign commercial bribery, the Court should deny the petitions on the basis that petitioners suffered no prejudice because all of their convictions are supported on alternative legal theories, including "classic" deprivation-of-money-or-property wire fraud, racketeering and/or obstruction of justice, and conspiracy to bribe executives of an entity headquartered in the United States." Resp. Br., p. 31 (emphasis supplied).

The September 23 Order is binding on all defendants and petitioners because it addressed Count One, common to all defendants and petitioners, the overarching Racketeering Conspiracy. The dismissal of Count One is the law of the case affecting all defendants and petitioners. There are two forms of law of the case. The first is the mandate rule, which requires a trial court to follow an appellate court's previous ruling in the same case. U.S. v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002), U.S. v. Capoccia, 354 Fed. Appx. 522, 524 (2d Cir. 2009). In Capocccia,

the Circuit considered the defendant bound by a ruling on an issue already considered in the same case by an earlier appellate panel. Id., at 524. The Quintieri court stated the rule as follows: "The second type occurs when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. Quintieri, 306 F. 3d at 1225. It holds "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case," (quoting U.S. v. Ucio, 940 F.2d 753 at 758 (2d Cir. 1991)), "unless 'cogent' and 'compelling' reasons militate otherwise." (Citing U.S. v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000)). A ruling as significant as the ruling by this Court in the September 23 Order that there exists no crime of foreign commercial bribery surely applies to all defendants charged in Count One of the indictment.

This Court's 2023 analysis extending the reasoning of two Supreme Court decisions to new facts is a change in the law because the Supreme Court placed its imprimatur on the September 23 Order when it vacated the Second Circuit decision in Lopez, which had overturned that Order. The government produces no evidence indicating that the Supreme Court's vacatur of the Second Circuit opinion in Lopez was a so-called "GVR," "Grant, Vacate and Remove," as argued by the United States. The Superme Court's decision vacating the Second Circuit opinion is more obviously a repudiation of the theory that honest services fraud may be violated through the bribery of foreign individuals in their own countries. It is the Supreme Court's vacatur of the Second Circuit opinion that creates new law.

Lopez is not persuasive authority as the Government argues here. Nor should this Court apply the Second Circuit's reasoning in Lopez to confirm the petitioners' honest-services wire fraud convictions on the merits. When the Government moved to dismiss the indictment against

Full Play and Lopez (ECF 2072), this Court asked the government to answer a number of questions, among them, Question 3, "Whether and to what extent the Court may consider the Second Circuit's reasoning in *United States v. Lopez,* 143 F.4th 99 (2d Cir. 2025), despite the Supreme Court's vacatur of that decision, --S.Ct.--, 2026 WL 79861 (Mem)." The U.S. Attorney's Office responded as follows:

> "The Second Circuit's decision in Lopez has been vacated and is no longer binding law. United States v. Lopez. 143 F.4th 99, 103 (2d Cir. 2025), cert. granted, judgment vacated sub nom. Full Play Grp., S.A. v. United States, No. 25-396, 2026 WL 79753 (U.S. Jan. 12, 2026), and cert. granted, judgment vacated, No. 25-396. 2026 WL 79861 (U.S. Jan. 12, 2026). The government has not confessed error. See Brief for the United States, Lopez v. United States No. 25-396, 2025 WL 3645624 at * 3 (U.S. Dec. 9, 2025); cf. Blaszczack, 56 F.4th at 233 (confessing error); United States v. Aytes, No. 19-3981, Dkt. No. 70 (2d Cir. Apr. 13. 2021)(confessing error). Accordingly, it is the government's position that as with any non-binding authority, the Court may reflect on the Second Circuit's reasoning but may not rely on it as precedential.

Dkt. No. 2076, p. 3.

It is a far cry from stating that the Court may reflect on the Second Circuit decision but may not rely on it as precedential, to what the Government says today, "*Lopez* is only persuasive authority, the Court should apply the Second Circuit's reasoning in *Lopez* to confirm the petitioners' honest-services wire fraud convictions on the merits." Resp. Br., p. 31.

While the Government did not confess error in the short brief it filed with the Supreme Court, it also did not mention the GVR theory it now touts as the rationale for the dismissal. See Full Play Group, S.A. v. United States of America, Brief for the United States, 2025 WL 3645624 (Dec. 9, 2025). The Government goes to great lengths to convince this Court that it should now adopt the Second Circuit's view on Lopez. It is an audacious effort to convince this Court to reverse itself after the Court spurred the reversal of the Second Circuit with its September 2023 order. It is sleight of hand for the government to say that it disposed of Full

Play and Lopez by a GVR instead of seeing the merits of its theory through to a decision by the Supreme Court. Now it urges this Court to reverse course and renounce its holding in the September 23 Order.

In its long ode to the virtues of the Second Circuit opinion, the Government accuses Mr. Vasquez of committing bribery of CONCACAF. (E.g., p. 41). However, there was no recitation of bribery by Mr. Vasquez to a CONCACAF official in the indictment and no allocution to such by Mr. Vasquez. The government argues that bribe money paid to others deprives the constituent organizations of funds. This is a slushy fact, a fact without substance, not a real fact, backed up only by an expert who testified at Napout's trial. (Government brief, p. 41).

## E. Conclusion

As a result, of the forgoing, we respectfully request that your Honor grant Mr. Vasquez's petition for a writ of error coram nobis.

Respectfully submitted,

Dated: August 27, 2026

Gary L. Cutler

By: /s/ Gary L. Cutler
Gary L. Cutler, P.C.
*Attorney for Petitioner*
*Reynaldo Vasquez*